# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **DAVID HOPKINS PLEMONS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-00845 |
| ) | Judge Campbell / Frensley |
| **RUSSELL WASHBURN, et al.,** ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon two Motions for Summary Judgment: the first, filed by Defendant Brun; and the second, filed by Defendant Washburn. Docket Nos. 103, 112. Also pending before the Court are Plaintiff's "Amended Motion for Summary Judgment" and Plaintiff's "Motion to consider the following for his Summary Judgment relief." Docket Nos. 90, 98.

As an initial matter, because Plaintiff's Motion for Summary Judgment (Docket No. 62) utterly failed to comply with the Federal and Local Rules, the undersigned issued a Report and Recommendation recommending that Plaintiff's Motion for Summary Judgment be denied, which was adopted by Judge Campbell on November 25, 2019. *See* Docket Nos. 62, 83, 118. Plaintiff's pending "Amended Motion for Summary Judgment" and "Motion to consider the following for his Summary Judgment relief" likewise fail to comply with the Federal and Local Rules. Despite filing these "Motions" after the undersigned issued his Report and Recommendation explaining the deficiencies in Plaintiff's Motion for Summary Judgment and the rationale for recommending the denial of that Motion, Plaintiff failed to cure those deficiencies in the instant filings. Accordingly, for the reasons set forth in the undersigned's previous Report and Recommendation (Docket No.

83), the undersigned likewise recommends that Plaintiff's "Amended Motion for Summary Judgment" and "Motion to consider the following for his Summary Judgment relief" be DENIED.

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, that Defendants violated his Eighth Amendment rights because, while in custody he was beaten and raped; that he informed Defendants Washburn and Brun and asked to be moved to protective custody; that Defendants Washburn and Brun failed to place him in protective custody; and that he was raped again. Docket Nos. 1, 6, 13, 16-1, 18, 30. Plaintiff further avers that he requested a rape kit, but his request was refused, as was his request for medical assistance. *Id.* He additionally avers that: (1) he reported that he had been beaten and raped to the Unit Managers, the Warden, and Defendant Brun; (2) he reported the assault to the designated hot line; (3) he filed a "PREA" report of the incident; (4) he spoke to the internal affairs representative and filed a "more indepth-detailed [*sic*] report" of the incident; (5) he wrote a letter about the second attack and gave the letter to Defendants Hoskins and Caster; (6) he wrote and filed a grievance, and (7) he reported the incident to his Case Manager and Counselor. *Id.*

Along with his Motion for Summary Judgment, Defendant Brun has contemporaneously filed a supporting Memorandum of Law; the Affidavits of Defendant Brun, Jessica McElroy, Lybrunca Cockrell, and Brenda Pevahouse; Plaintiff's medical records, and a Statement of Undisputed Material Facts. Docket Nos. 103-106.[1] As grounds for his Motion, Defendant Brun argues that Plaintiff's only timely-filed grievance during the relevant period neither raises allegations against

---

[1] Defendant Brun has filed two copies of his Statement of Undisputed Material Facts. Docket Nos. 105, 106.

him nor mentions any alleged sexual assault/rape, and that accordingly, Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. Docket Nos. 103, 104. As to Plaintiff's failure to protect claim, Defendant Brun argues that he had no knowledge of Plaintiff's alleged sexual assault, nor did he have any knowledge of any excessive risk of harm to Plaintiff such that Plaintiff cannot establish the requisite elements of a failure to protect claim. *Id.* Plaintiff has not responded to Defendant Brun's Motion or Statement of Undisputed Material Facts.

Along with his Motion for Summary Judgment, Defendant Washburn has contemporaneously filed a supporting Memorandum of Law; the Declarations of Defendant Washburn, Lybrunca Cockrell, and Brenda Pevahouse; and a Statement of Undisputed Material Facts. Docket Nos. 112-117. As grounds for his Motion, Defendant Washburn argues that he is entitled to summary judgment because: (1) Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act; (2) respondeat superior is not a basis for the imposition of liability under § 1983 and Plaintiff cannot establish that Defendant Washburn personally encouraged or in some other way directly participated in the specific instances of misconduct alleged in the Complaint, nor can Plaintiff establish that Defendant Washburn played any role in connection with Plaintiff's alleged requests for protection from other inmates or alleged requests for medical treatment, such that Plaintiff cannot establish his Eighth Amendment claim against Defendant Washburn; (3) Plaintiff cannot establish an Eighth Amendment deliberate indifference claim against him because the evidence establishes that Defendant Washburn provided Plaintiff with reasonable safety at all times during his incarceration at Trousdale; and (4) the evidence establishes that Plaintiff did not suffer a physical injury that was more than de minimus, as required under the Prison

3

Litigation Reform Act in order to sustain a claim under the Eighth Amendment. *Id.*

Plaintiff has not responded to either Defendant Washburn's Motion or Statement of Undisputed Material Facts.

For the reasons discussed below, the undersigned finds that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. The undersigned therefore recommends that Defendants' Motions for Summary Judgment (Docket Nos. 103, 112) be GRANTED.

## II. Undisputed Facts[2]

### A. Affidavit of Christopher Brun

At all times relevant to the instant action, Christopher Brun was employed by the Tennessee Department of Correction ("TDOC") as the TDOC Contract Monitor of Operations at Trousdale Turner Correctional Center ("Trousdale"). Docket No. 103-1, Affidavit of Christopher Brun ("Brun Aff."), ¶¶ 2, 3. To the best of his knowledge, Defendant Brun has never met or spoken with Plaintiff. *Id.*, ¶ 4. Plaintiff never claimed to Defendant Brun that he had been sexually assaulted nor requested protective custody placement. *Id.*, ¶ 5. If such a claim had ever been made to him, Defendant Brun would have recalled it and recalled Plaintiff, as such allegations are unusual and serious. *Id.*, ¶ 6. Defendant Brun had no knowledge that Plaintiff claimed to be sexually abused at any time in 2017 at Trousdale. *Id.*, ¶ 7.

### B. Affidavit of Jessica McElroy

At all times relevant to the instant action, Jessica McElroy was employed by CoreCivic as

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

4

the Institutional Records Supervisor at South Central Correctional Facility; she has attached copies of Plaintiff's original records. Docket No. 103-2, Affidavit of Jessica McElroy ("McElroy Aff."). On December 29, 2017, Plaintiff completed and signed a TDOC Health Questionnaire, which asked, *inter alia*, "As an adult or child, have you personally experienced being sexually abused?" *Id.* Plaintiff answered, "No." *Id.* On January 8, 2018, on the Sexual Abuse Screening Tool form at South Central Correctional Facility, Plaintiff answered "No" to all questions, including: (1) "Have you been the victim of sexual abuse or unwelcome sexual activity?" and (2) "Have you ever been threatened with sexual assault by another inmate/resident while incarcerated?" *Id.*

On February 8, 2018, Plaintiff filed a claim alleging that he was sexually assaulted at Trousdale on May 25, 2017 and November 1, 2017. *Id.* The claim was investigated and the allegations determined to be unfounded. *Id.*

**C.     Affidavit of Lybrunca Cockrell**

Lybrunca Cockrell is employed by CoreCivic as the Grievance Coordinator at Trousdale. Docket No. 103-3, Affidavit of Lybrunca Cockrell ("Cockrell Aff.."). Plaintiff filed only one grievance during the period of May 1, 2017 to December 30, 2017; a true and accurate copy of which has been provided. *Id.* Said grievance makes no mention or reference to Defendant Brun or any alleged sexual assault/rape experience. *Id.*

**D.     Affidavit of Brenda Pevahouse**

Brenda Pevahouse is employed by CoreCivic as the Grievance Chairperson at South Central Correctional Facility; she has attached copies of Plaintiff's original records. Docket No. 103-4, Affidavit of Brenda Pevahouse ("Pevahouse Aff.").

On February 10, 2018, Plaintiff filed a grievance claiming that he had been sexually abused

5

at Trousdale in 2017. *Id.* This was Plaintiff's first and only grievance on the issue. *Id.* The grievance was rejected in part as untimely because "Grievances must be filed within seven calendar days of the occurrence giving rise to the grievance." *Id.*

**E.     Declaration of Russell Washburn**

Russell Washburn is employed by CoreCivic as Warden at Trousdale. Docket No. 115, Declaration of Russell Washburn ("Washburn Dec."), ¶ 1. CoreCivic contracts with TDOC to operate Trousdale. *Id.*, ¶ 3.

Plaintiff was housed as an inmate at Trousdale from May 22, 2017 through December 29, 2017. *Id.*, ¶ 4. Plaintiff did not request that Defendant Washburn provide him with protection from other inmates prior to the events he alleges took place, and Defendant Washburn was not aware of any threats to Plaintiff's safety. *Id.*, ¶ 5. Defendant Washburn neither instructed nor encouraged CoreCivic employees or anyone else to refuse to provide Plaintiff with protection from other inmates or to assign a suspected gang member to Plaintiff's cell. *Id.*, ¶ 6. If an inmate requested protection from other inmates, Defendant Washburn would not delay in providing protection if the inmate required such protection. *Id.*, ¶ 7.

When CoreCivic employees receive information which indicates that an inmate may be in danger from other inmates, an immediate inquiry will be made concerning the facts of the situation to determine whether the alleged threats are substantiated and whether immediate protection is needed. *Id.*, ¶ 8. CoreCivic requires an investigation into the information received because of the voluminous number of instances of inmates reporting threats from other inmates, which often are unsubstantiated. *Id.*, ¶ 9. CoreCivic policies require that employees fully and immediately document all information received regarding threats to inmates incarcerated at Trousdale. *Id.*, ¶ 10.

6

Plaintiff's records do not contain documentation of any threats made by other inmates prior to the alleged assaults. *Id*., ¶ 11. Plaintiff's sexual assault allegations were investigated under the Prison Rape Elimination Act, and the investigator determined that his allegations were unfounded. *Id.*, ¶ 12.

Although Plaintiff contends that Defendant Washburn ignored his requests for medical treatment, Plaintiff did not direct any request to Defendant Washburn to receive medical treatment, and Defendant Washburn would not ignore any inmate's medical needs and would help an inmate secure necessary medical treatment if an inmate reported suffering an injury. *Id.*, ¶ 13.

## F.     Declaration of Lybrunca Cockrell

Lybrunca Cockrell is an employee of CoreCivic and serves as the Grievance Coordinator at Trousdale. Docket No. 116, Declaration of Lybrunca Cockrell ("Cockrell Dec."), ¶ 2. CoreCivic's administrative grievance system enables inmates at Trousdale to seek redress for issues relating to the conditions of their confinement. *Id.*, ¶ 3.

Pursuant to Policy 501.01, Inmate Grievance Procedures, the processing of a standard inmate grievance at Trousdale proceeds as follows:

> First Level: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on the CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.
>
> Second Level: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five

7

working days of the hearing, the grievance committee's proposed response will be documented on CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.

Third Level: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and is not subject to appeal.

*Id.,* ¶ 4, *quoting* Policy 501.01.

Plaintiff did not submit any grievances with respect to access to medical treatment during his incarceration at Trousdale before he filed this lawsuit. *Id.*, ¶ 5. Plaintiff also did not submit any grievances with respect to any alleged physical or sexual assault during his incarceration at Trousdale before he filed this lawsuit. *Id.*, ¶ 7.

Plaintiff filed only one grievance during his incarceration at Trousdale. *Id.*, ¶ 8. On November 8, 2018, Plaintiff filed a grievance where he complained about a suspected gang member being placed in his cell and where he stated that he feared for his life as a result. *Id.*, ¶ 9, *citing* Plaintiff's November 8, 2017 grievance. Plaintiff does not mention Defendant Washburn by name, nor does he contend that Defendant Washburn failed to protect him from physical or sexual assault. *Id.*, ¶ 10. As a result, Plaintiff did not exhaust his administrative remedies on his claims that Defendant Washburn failed to protect him.. *Id.*, ¶ 11.

### G. Declaration of Brenda Pevahouse

Brenda Pevahouse is employed by CoreCivic as the Grievance Coordinator at South Central

Correctional Facility. Docket No. 117, Declaration of Brenda Pevahouse ("Pevahouse Dec."), ¶ 2. South Central follows the Inmate Grievance Procedures promulgated by the Tennessee Department of Correction ("TDOC"). *Id.*, ¶ 3. Policy 501.01, Inmate Grievance Procedures, enables inmates at South Central to seek redress for issues relating to the conditions of their confinement. *Id.*

The Grievance Coordinator may determine that a grievance is not grievable. *Id.*, ¶ 4. If this happens, the Grievance Coordinator will complete and provide to the inmate an Inappropriate Grievance Notification. *Id.* The Inmate Grievance Procedures allow inmates to appeal an administrative decision that a grievance is not grievable. *Id.*, ¶ 5. Specifically, "If the chairperson determines a matter to be non-grievable, the grievant may appeal that decision as outlined in the handbook *TDOC Inmate Grievance Procedures.*" *Id.* Also, the bottom section of the Inappropriate Grievance Notification provides in part: "If you are still interested in filing this grievance, please make the necessary corrections and return to Grievance Office for further processing immediately. If you would like to appeal this response, sign the bottom of your grievance, check "yes," then date it and place [it] (with this cover sheet) back in the grievance box." *Id.* If the inmate appeals the decision that a grievance is not grievable, then the grievance is returned to the Grievance Coordinator. *Id.*, ¶ 6. If the inmate does not appeal the decision that the grievance is not grievable, then the inmate simply keeps the grievance and the Inappropriate Grievance Notification. *Id.*

Plaintiff submitted a grievance on February 10, 2018, while he was incarcerated at South Central. *Id.*, ¶ 7. Plaintiff's February 10, 2018, grievance was returned to him as not grievable. *Id.*, ¶ 8. Plaintiff did not exhaust his administrative remedies as to the issues raised in his February 10, 2018 grievance. *Id.*, ¶ 9.

9

### H. Plaintiff's Medical Records

Plaintiff's May 1, 2017 to December 30, 2018 medical records do not document any physical injury to Plaintiff resulting from any alleged sexual assault/rape experience. Docket No. 103-5, Certified Copy of Plaintiff's Medical Records.

### III. Law and Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motions on September 18, 2019 and September 25, 2019. Docket Nos. 103, 112. Plaintiff has failed to respond to Defendants' Motions.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Statements of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as

10

to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

### B. Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

> **(c) Procedures.**
> **(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

11

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

### C. 42 U.S.C. § 1983

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under

12

§1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether the plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, the plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, the plaintiff argued in part that he was not required to exhaust his administrative remedies

13

because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.
> 1.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all

14

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

**E.     The Case at Bar**

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

The undisputed facts establish that, pursuant to Policy 501.01, Inmate Grievance Procedures, the processing of a standard inmate grievance at Trousdale proceeds as follows:

> First Level: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on the CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.
>
> Second Level: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five working days of the hearing, the grievance committee's proposed response will be documented on CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.
>
> Third Level: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the

15

grievance. This response is final and is not subject to appeal.

Cockrell Dec..*,* ¶ 4, *quoting* Policy 501.01.

It is undisputed that, prior to filing the instant action, Plaintiff did not submit any grievances with respect to any alleged physical or sexual assault during his incarceration at Trousdale, and that Plaintiff did not submit any grievances with respect to access to medical treatment during his incarceration at Trousdale. *Id.*, ¶¶ 5, 7. It is also undisputed that Plaintiff filed only one grievance during his incarceration at Trousdale and that Plaintiff's grievance does not mention or reference Defendant Brun, does not mention Defendant Washburn by name, does not contend that Defendant Washburn failed to protect him, and does not mention or reference any alleged sexual assault/rape. *Id.*, ¶¶ 8, 10; Cockrell Aff., attachments. It is further undisputed that Plaintiff did not exhaust his administrative remedies with regard to his claims against either Defendant Brun or Defendant Washburn. Cockrell Dec., ¶¶ 6, 11; Pevahouse Dec., ¶ 9, Cockrell Aff., attachments.

In any event, in addition to not alleging physical or sexual assault or denial of medical care contemporaneous with the alleged offense, Defendants conducted an investigation and were unable to substantiate any of Plaintiff's claims.

### IV. Conclusion

For the foregoing reasons, the undersigned finds that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. The

undersigned therefore recommends that Defendants' Motions for Summary Judgment (Docket Nos. 103, 112) be GRANTED. The undersigned further recommends that Plaintiff's "Amended Motion for Summary Judgment" and "Motion to consider the following for his Summary Judgment relief" (Docket Nos. 90, 98) be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**